IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Thomas Anthony Byars,                    )
                                         )     Civil Action No. 6:05-3111-TLW-WMC
                      Plaintiff,         )
                                         )     **REPORT OF MAGISTRATE JUDGE**
           vs.                           )
                                         )
Jo Anne B. Barnhart,                     )
Commissioner of Social Security,         )
                                         )
                      Defendant.         )
_____ )


        This case is before the court for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this

District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

        The plaintiff brought this action pursuant to Section 205(g) of the Social

Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of

the Commissioner of Social Security denying his claim for disability insurance benefits

under Title II of the Social Security Act.


                        **ADMINISTRATIVE PROCEEDINGS**

        The plaintiff filed an application for disability insurance benefits on March 3,

2003, alleging that he became unable to work on January 15, 2003.  The application was

denied initially and on reconsideration by the Social Security Administration.  On March 7,

2005, the plaintiff requested a hearing.  The administrative law judge, before whom the

plaintiff, his attorney, and a vocational expert appeared, considered the case *de novo*, and

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

on February 22, 2005, found that the plaintiff was not under a disability as defined in the

Social Security Act, as amended.  The administrative law judge's finding became the final

decision of the Commissioner of Social Security when it was approved by the Appeals

Council on August 31, 2005.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the

Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(1) of the Social Security Act and has not engaged in substantial gainful activity since the alleged onset of disability.

> (2)    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations but not severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

> (3)    The claimant's allegations regarding his limitations are less than fully credible.

> (4)    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

> (5)    The claimant has retained the residual functional capacity to perform simple, routine work at the light exertional level in a low-stress, supervised environment with the restrictions of only occasion] interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no climbing of ladders or scaffolds; no work requiring binocular vision; and avoidance of hazards such as unprotected heights and dangerous machinery.

> (6)    The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

> (7)    The claimant is a "younger individual" (20 CFR § 404.1563).

> (8)    The claimant has "a high school education" (20 CFR § 404.1564).

(9)     The claimant's acquired skills from past relevant work are not transferable to other work because of the residual functional capacity restriction of simple, routine work (20 CFR § 404.1568).

(10)     The claimant has the residual functional capacity to perform a significant range of light work  (20 CFR § 404.1567).

(11)     Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples include the light, unskilled occupations of janitor, with 50,000 such jobs in the national economy; laundry sorter/folder, with 50,000 such jobs nationally; and yard service helper, with 50,000 such jobs nationally.

(12)     The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(1)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."   42 U.S.C. §423(a).   "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 47 years old on the date of the ALJ's decision.  The plaintiff has a high school education with one semester of college, and past relevant work as an automobile mechanic and maintenance worker (Tr. 13).  His alleged onset of disability date is January 15, 2003 (Tr. 48), based on the residual effects of a cerebral aneurysm (Tr. 59).

The record reveals that the plaintiff was seen at Palmetto Richland Memorial Hospital on January 15, 2003, after experiencing a subarachnoid hemorrhage.  It was noted that he was noncompliant with his prescribed hypertension medication and that he had also suffered a previous hemorrhage and aneurysm some five to six years earlier.  Angiography tests revealed that the plaintiff had a recurrent basilar tip aneurysm, and arrangements were made to transfer him to the Emory University Hospital for treatment (Tr. 99-105).

The plaintiff was treated at Emory University Hospital from January 16, 2003, through February 12, 2003.  After undergoing surgery to "clip" his basilar tip aneurysm, he was dismissed to HealthSouth Rehabilitation Hospital.   Upon discharge, he was

5

neurologically intact, able to move all extremities, and exhibited 5/5 motor strength with no drift or sensory deficit (Tr. 123-45).

The plaintiff underwent in-patient therapy at HealthSouth Rehabilitation Hospital from February 12, 2003, through March 2, 2003. He was discharged on March 2, 2003, after doing "very well" with his physical, occupational, and speech therapy. His short term memory was assessed to be 75% intact, and his long term memory was intact. In addition, he was able to solve simple problems "without much difficulty," although he had "minor" difficulties with complex problems. He continued as an outpatient from March 6, 2003, through August 6, 2003 (Tr. 146-64, 187-202).

The plaintiff was examined on April 2, 2003, by Dr. Daniel L. Barrow, who had performed his surgery. Dr. Barrow noted that the plaintiff was "doing extraordinarily well" and that he was able to ambulate and carry out all of his activities without difficulty." The plaintiff did have oculomotor palsy on the right, but Dr. Barrow indicated that it had almost resolved (Tr. 165-67).

On July 3, 2003, the plaintiff underwent a neuro-psychological consultative examination conducted by Robert E. Deysach, Ph.D. The plaintiff performed well on a series of tests, and Dr. Deysach opined that his auditory memory was "well preserved," although his visual memory was very low. Dr. Deysach recommended that the plaintiff be evaluated by Vocational Rehabilitation Services (Tr. 168-71).

The plaintiff was treated from April 7, 2003, through September 16, 2004, by Dr. Julie A. Taylor. When first seen, it was noted that the plaintiff "has been doing well without any complaints whatsoever." A physical examination conducted on May 9, 2003, yielded essentially normal results, including 5/5 strength in all extremities, although it was noted that he had a "vertical imbalance" of gaze and a gait disturbance. On July 18, 2003, Dr. Taylor noted that the plaintiff was "doing well without any significant complaints," although he had a very serious fungal infection in his toenails. He also inquired about receiving a trial sample of Viagra. On October 28, 2003, the plaintiff presented "without any

6

complaints whatsoever," and Dr. Taylor noted that he was walking "fairly briskly" for 30-40 minutes per day. On January 9, 2004, the plaintiff presented with complaints of fatigue and poor energy and with a note from a family member that he seemed to be depressed. Dr. Taylor indicated that he was otherwise "doing well, without any other complaints whatsoever," but she prescribed medication for his depression. On February 3, 2004, the plaintiff again indicated that he "was doing well without complaints," although he was still feeling fatigued. Dr. Taylor increased his dose of prescribed medication slightly. On March 9, 2004, Dr. Taylor noted that the plaintiff was "feeling considerably better" and had discontinued use of his anti-depressant medication (Tr. 266). On July 8, 2004, Dr. Taylor again noted that the plaintiff was "doing well, without any complaints at all" (Tr. 172-183, 262-275).

On September 16, 2004, Dr. Taylor wrote in a "To Whom It May Concern" letter that the plaintiff was "incapable of working any form of job whatsoever that involves any physical activity, or any degree at all of cognitive processing" (Tr. 262).

On August 1, 2003, the plaintiff underwent a cerebral angiogram as a follow-up for his aneurysm surgery. No significant changes were noted, and there was no evidence or recurrence or significant enlargement of the small area of the patent aneurysm neck (Tr. 184-186).

On October 16, 2003, the plaintiff underwent a consultative psychological evaluation conducted by Robert W. Noelker, Ph.D. Testing revealed that the plaintiff had "good basic academic skills," including reading at the post-high school level, and a verbal IQ of 101, a performance IQ of 81, and a full-scale IQ of 91. He also exhibited good immediate auditory memory, delayed auditory memory, auditory recognition delayed, and working memory. He had significant deficits in visual immediate memory, immediate memory, visual delayed memory, and general memory. Dr. Noelker opined that the plaintiff had "at least" average intellectual skills, although he indicated that the plaintiff's Global

7

Assessment of Functioning (GAF) was 54[2].  He further opined that if the plaintiff was awarded funds, he would not be able to handle them in an appropriate fashion at (Tr. 203-10).

In an undated "Mental Residual Functional Capacity Assessment" form, a State agency medical consultant concluded that the plaintiff had no significant limitations in his ability to understand and remember; was not significantly limited in his ability to sustain concentration and persistence, except for being moderately limited in his ability to maintain attention and concentration for extended periods; was not significantly limited in his capacity for social interaction, except for moderate limitations in the ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors; and was not significantly limited in his ability to adapt, except for being moderately limited in his ability to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others (Tr. 219-220).

A State agency medical consult also completed an undated "Psychiatric Review Technique" form in which he opined that the plaintiff was mildly limited in his activities of daily living; had moderate difficulties in maintaining social functioning; had moderate difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation (Tr. 224-33).

On June 11, 2003, a State agency medical consultant completed a "Physical Residual Functional Capacity Assessment" form in which he concluded that the plaintiff could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk for about six  hours in an eight-hour workday; sit for about six

---

[2]A GAF score of 54 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job). By contrast, a GAF of 61 would indicate only mild symptoms and limited functional difficulties. *Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. 1994) (*DSM-IV*). GAF scores, however, are not a rating of impairment, but rather constitute an assessment of one moment in time rather than a longitudinal assessment. *Diagnostic & Statistical Manual of Mental Disorders - Text Revision* (2000) at 30-32 (*DSM-TR*) (STAT! Ref Library CDROM, Third Quarter 2005).

hours in an eight-hour workday; and that his ability to push and/or pull was unlimited (Tr. 251).   On October 21, 2003, a second State agency medical consultant completed a "Physical Residual Functional Capacity Assessment" form and reached the same conclusions (Tr. 238-45).

On July 9, 2004, the plaintiff underwent a second cerebral angiogram as a follow-up for his aneurysm surgery.  There was no evidence of residual or recurrence of the aneurysm at the basilar tip (Tr. 258-61).

The plaintiff was seen at the Palmetto Richland Memorial Hospital Emergency Center on October 31, 2004, after presumably suffering a seizure.  A CT scan of his head showed no evidence of blood or subarachnoid hemorrhage, and laboratory data was "unremarkable." He was discharged without receiving treatment and without any headache or change in his neurological status (Tr. 279-82).

At the hearing, the plaintiff testified that he lived with his parents and that he did not do much on a daily basis (Tr. 297).  He said that he had trouble remembering things (Tr. 297).  He stated that he had no problems standing, although his left leg did not function properly when he walked (Tr. 299).  He also testified that he had problems with manual dexterity (Tr. 300) and concentrating on tasks (Tr. 301-302).

Charlie A. Edwards, Ph.D., testified as a vocational expert at the plaintiff's hearing.  Dr. Edwards testified that the plaintiff's past relevant work as a certified auto mechanic had been medium and skilled and as a maintenance person had been medium and skilled (Tr. 312).  When the ALJ posed a hypothetical question based on a person of the plaintiff's age, experience, educational background, and residual functional capacity for simple, routine medium work performed in a low-stress, supervised environment, that required only occasional interaction with the public, no climbing, no work requiring binocular vision, and no work around hazards such as unprotected heights and dangerous machinery, Dr. Edwards testified that such a person could perform the requirements of construction helper, janitor in the light category, lumber stacker, laundry folder/sorter, and yard service

helper (Tr. 312-314).  Dr. Edwards also stated that there was no conflict between his testimony and the job requirements specified in the *Dictionary of Occupational Titles* (*"DOT"*) (Tr. 314).

## ANALYSIS

The ALJ determined that the plaintiff's right ocular motor palsy and impaired short-term memory secondary to aneurysm are severe impairments.  He further found that the plaintiff had the residual functional capacity ("RFC") to perform a significant range of light work with restrictions and was unable to perform his past relevant work (Tr. 19). However, he determined that there were other jobs in the national economy that the plaintiff could perform (Tr. 19-20).

In his *pro se* brief, the plaintiff argues that the ALJ's opinion is not based upon substantial evidence, and the ALJ erred by (1) failing to properly evaluate the opinion of treating physician Dr. Julie Taylor and (2) failing to properly evaluate his credibility with regard to his subjective complaints.

### *Treating Physician*

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case.  *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors:  (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  20 C.F.R. §404.1527(d)(2)-(5).  Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p, 1996 WL 374188, *5.  As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

On September 16, 2004, Dr. Taylor, the plaintiff's treating physician, wrote the following in a "To Whom It May Concern" letter:

> I am Mr. Byars' primary care physician and am seeing him for a number of medical issues, one of which is the fact that he's had ongoing problems with cerebral aneurysms for quite a number of years with several prior ruptures, and multiple neurosurgical procedures including coil placement within some of the vessels, which then have re-ruptured and had to be replaced.  Mr. Byars has suffered a degree of cognitive dysfunction from his various episodes of rupture and neurosurgical procedures, and is incapable of working any form of job whatsoever that involves any physical activity, or any degree at all of cognitive processing.

(Tr. 262).

11

The ALJ gave Dr. Taylor's opinion "little weight" (Tr. 16-17).  The ALJ stated the reason for his finding was that Dr. Taylor's statement was inconsistent with her treatment notes.  Specifically, the plaintiff consistently and repeatedly reported that he had no "complaints whatsoever" (*see, e.g.*, Tr. 173, 175, 265, 267, 269).  Dr. Taylor also noted that the plaintiff was able to walk "fairly briskly" for 30-40 minutes per day (Tr. 16, 269).  *See Craig*, 76 F.3d at 590 (A physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence); 20 C.F.R. § 404.1527(c)(2).  The only physical complaints recorded by Dr. Taylor were fatigue and decreased energy (Tr. 16).  The ALJ further noted that "[t]he claimant received all of his medical treatment related to residuals of the aneurysm from specialists. Dr. Taylor was not involved in much more than prescribing continued medications, including Dilantin, after October 2004" (Tr. 16-17).  Finally, the ALJ cited that the opinions of Dr. Barrow, who performed the plaintiff's surgery, and Dr. Noelker, who performed a consultative psychological evaluation of the plaintiff, as well as the opinions of the State Agency physicians, in support of his decision to give Dr. Taylor's opinion little weight (Tr. 17).   Dr. Noelker noted that the plaintiff had "good basic academic skills" and "at least" average intellectual skills (Tr. 208-209), albeit with some memory deficits (Tr. 209).  The State Agency medical consultants concluded that the plaintiff was able to perform the requirements of light work, with some limitations (Tr. 219-220, 234, 239, 251).  *See* SSR 96-6p, 1996 WL 374180 (opinion of State agency medical consultants must be considered and weighed as those of highly qualified experts); *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (ALJ can give great weight to an opinion from a medical expert when the medical expert has throughly reviewed the record, the objective medical evidence supports the opinion, and the opinion is consistent with the other medical opinions).  Based upon the foregoing, this court finds that the ALJ appropriately evaluated the opinion of the plaintiff's treating physician, and his decision to give the opinion little weight is based upon substantial evidence.

*Credibility*

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

13

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

At the hearing, the plaintiff testified that he had left-sided weakness and that his left foot dragged when he walked. He also complained that his left hand was not strong. He testified that he had trouble focusing and concentrating, in addition to memory problems. He further testified that he continued to experience blurry vision and double vision (Tr. 292-93, 297, 299-302, 306). In his brief, the plaintiff stated that his left sided weakness affected his grip and performance of fine tasks with his left hand.

The ALJ found that the plaintiff's "allegations regarding his limitations are less than fully credible" (Tr. 19). However, in the body of the decision, the ALJ did not discuss the plaintiff's credibility at all. Clearly, the objective medical evidence shows the existence of medical impairments that result from anatomical, physiological, or psychological abnormalities and that could reasonably be expected to produce the pain or other symptoms alleged. *See Craig*, 76 F.3d at 595. Accordingly, at the second step, the ALJ should evaluate the intensity and persistence of the plaintiff's subjective symptoms and the extent to which they affect his ability to work. The defendant argues that "there was a lack of supporting objective medical evidence substantiating Plaintiff's allegations of an inability to perform all substantial gainful activity" (def. brief 12). However, post-hoc rationalizations are prohibited. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing

14

grounds in support of the agency's decision that were not given by the ALJ."). Because the ALJ did not state the factors and evidence upon which he relied in evaluating the plaintiff's credibility, it is impossible for this court determine whether his finding was based upon substantial evidence. Accordingly, the case should be remanded to the ALJ for an assessment of the plaintiff's subjective symptoms in accordance with the above-cited law.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

February 12, 2007

Greenville, South Carolina